UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JAMES MILLER GREEN | CIVIL ACTION |
| VERSUS | NO. 10-2782 |
| DANIEL EDWARD-SHERIFF, JOYCE JACKSON-WARDEN, STEWART MURPHY-HEAD OF ADMINISTRATION, SHAWN SWEENEY-DEPUTY NURSE, CHRISTOPHER THOMAS-INMATE NURSE, BRANDON PINION-ASSISTANT WARDEN | SECTION "R"(4) |

## PARTIAL REPORT AND RECOMMENDATION

Before the Court is a **Motion to Dismiss (Rec. Doc. No. 18)** filed by the defendants, Tangipahoa Parish Sheriff Daniel Edwards, Warden Joyce Jackson, Jail Administrator Stewart Murphy, Deputy Nurse Sean Sweeney, Inmate Nurse Christopher Thomas, and Assistant Warden Brandon Pinion, each in their official capacity. The motion and the entire matter were referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to **28 U.S.C. § 636(b)(1)(B) and (C), § 1915e(2), and § 1915A**, and as applicable, **42 U.S.C. § 1997e(c)(1) and**

**(2)**.  On August 18, 2011, the Court conducted a hearing pursuant to *Spears v. McCotter*,[1] and its progeny, with the plaintiff and counsel for the defendants participating by conference telephone call.[2]

**I.      Factual Summary**

      **A.      The Complaint**

The plaintiff, James Miller Green ("Green"), is currently incarcerated in Tangipahoa Parish Jail ("TPJ") in Amite, Louisiana.  Green filed this *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983 against the defendants, Sheriff Edwards, Warden Jackson, Murphy, Sweeney, Thomas, and Assistant Warden Pinion, seeking an investigation into the medical department at the jail and monetary compensation for his pain and suffering resulting from the defendants' alleged failure to provide adequate medical care.

Green alleges that on November 16, 2009, he was housed on the west wing of the jail in cell B-2, when two Louisiana Department of Corrections ("DOC") inmates Gerald Pine and Ronald Jordan began to fight.  Green alleges that, as he tried to get out of the way, a door slammed on his hand, tearing the tendons.  He claims that he wrote administrative remedy complaints and requests for medical care following the incident.

He further states that it took the jail one week to take him to the hospital.  While there, the doctor told him that the tendons in his hand were cut and that he needed surgery to be able to use the hand again.  He alleges that he was told that he had another appointment in April, but they did not

---

[1] 766 F.2d 179 (5th Cir. 1985).  The purpose of the *Spears* Hearing is to ascertain what it is the prisoner alleges to have occurred and the legal basis for the claims.  The information elicited at the hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e).  *Wilson v. Barientos*, 926 F.2d 480, 482 (5th Cir. 1991).

[2] Rec. Doc. No. 21.  The plaintiff was sworn prior to testifying.  The hearing was digitally recorded.

keep it.  He claims that, each time he asked about his appointment, he was told that one was set.  He also claims that he received a bill from the hospital that the prison did not pay.

He requests that the Court obtain his medical records from Lallie Kemp Medical Center and investigate the medical department at the jail.  He also asks for unspecified monetary damages as compensation for his pain and suffering.

### B. The *Spears* Hearing

During the *Spears* Hearing, Green testified that he is a pretrial detainee awaiting trial in November of 2011 on charges of two counts of aggravated battery and one count of unauthorized entry of an inhabited dwelling.  He further testified that, in November of 2009, he was taken to dormitory B-2 on the west wing of TPJ.  At some point, two DOC inmates, including Gerald Pine, got into a fight.  A door was slammed during the fight, and as he tried to get out of the way, the door shut on his right hand.  The tendons were cut in his hand, and he still cannot move his middle finger.

He stated that there was no deputy nearby during the fight.  Other inmates beat on the window to get the attention of a deputy.  Green stated that he had to call his wife to have her call the jail to send a deputy to the dormitory.  He eventually saw inmate nurse Christopher Thomas, who wrapped his hand at the direction of the deputies.  He stated that Thomas attended to sick inmates when Nurse Sean Sweeney was not there.  Green did not receive medication at that time.

After his hand was wrapped, he was moved to dormitory A-3.  He also indicated that Gerald Pine was sent to maximum security for his role in the fight.  He was unaware of where the other DOC inmate was sent.

About three to four days after the incident, he was seen by Nurse Sean, a deputy the inmates called "nurse" or "doctor."  He was given two ibuprofen, and Nurse Sean sent him to Lallie Kemp

Medical Center to rule out a fracture. His hand was not broken, but it continued to swell. He was eventually sent back to Lallie Kemp to have the "meat" cut out to allow the cut on his hand to heal.

Green testified that he continued to fill out medical request forms which were sent to Nurse Sean. He was continually told that he had an appointment with a hand specialist, but he was not taken to see the specialist until August 13, 2010. The specialist told him that it was too late to do anything with his hand because it had started to heal. The specialist said he would recommend hand therapy, but Green did not receive that treatment. Green conceded that he was never told by the doctor that he needed surgery or that the therapy would improve the use of his finger.

Green stated that he still cannot use the middle finger of his right hand, and he is right-handed. He also claims that he has not been back to see another doctor. He also testified that the prison does not have a doctor or other medical care provider except Nurse Sean and the inmate nurse.

Green testified that he continued to send medical care requests to Nurse Sean and that he sent administrative complaints about his hand to the Warden. He conceded that he did not complain to the Warden about the lack of security and that he does not intend to raise such a claim in this suit. He further claims that he did not receive any more responses to the requests or complaints.

Green stated that he sued Stewart Murphy and Assistant Warden Pinion in their roles as administrators at the jail. He sued Warden Jackson because she is over the jail and because she did not respond to his grievance complaints about his medical care. He also sued Sheriff Edwards because the sheriff is in control over the jail and what goes on in the jail.

Green further complained that the jail was taking money out of his prison account to pay for hospital bills exceeding $100. He stated that he was not supposed to pay that much under the prison's medical fee schedule.

### C.     **Defendants' Motion to Dismiss**

Before the court is a Motion to Dismiss (Rec. Doc. No. 18) filed by the defendants, Edwards, Jackson, Murphy, Sweeney, Thomas, and Pinion, seeking dismissal of the claims against each of them in their official capacities.[3] The motion does not specifically address the individual capacity of the defendants, although they also argue that the medical indifference allegations against each of them are vague and non-specific warranting dismissal for failure to state a claim for which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). Green has not opposed the motion.

## II.    **Standards of Review**

### A.     **Appropriate Standard to Address Defendants' Motion**

The defendants have filed their motion seeking relief pursuant to Fed. R. Civ. P. 12(b)(6). Rule 12, however, states that a motion raising defenses listed therein, including Rule 12(b)(6), "must be made *before* pleading if a responsive pleading is allowed." (emphasis added). The defendants, Edwards, Jackson, Murphy, Sweeney, and Pinion, filed an answer to the plaintiff's complaint on October 5, 2010, over six months before the instant motion was filed. As to these defendants, the Rule 12(b)(6) motion to dismiss is untimely. *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999).

Fed. R. Civ. P. 12(c), on the other hand, states that "[a]fter the pleadings are closed - but early enough not to delay trial - a party may move for judgment on the pleadings." The defendants have not filed a motion captioned as one seeking judgment on the pleadings nor have they invoked Rule 12(c). However, the Court may construe an untimely Rule 12(b)(6) motion as one for judgment on the pleadings under Fed. R. Civ. P. 12(c). *Jones*, 188 F.3d at 324; Fed. R. Civ. P. 12(h)(2)(B); *see*

---

[3]Curiously, the motion has been asserted on behalf of inmate nurse Christopher Thomas in his official capacity. Counsel has not enrolled on his behalf nor was the previous answer filed on his behalf.

*also*, *Quality Infusion Care Inc. v. Humana Health Plan of Texas, Inc.*, No. 07-20703, 2008 WL 3471861 (5th Cir. Aug. 13, 2008). In the interest of justice, the Court will consider the defendants' motion accordingly.

### B. Standard of Review under Fed. R. Civ. P. 12(c)

The standard for addressing a Rule 12(c) motion is the same as that used for deciding motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). *In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 209-10 (5th Cir. 2010). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In assessing a Rule 12(c) motion, the district court may look to the pleadings and any documents attached thereto. *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 313 (5th Cir. 2002). The court must accept all well-pleaded facts as true, viewing the complaint in the light most favorable to the plaintiff. *In re Great Lakes Dredge & Dock Co.*, 624 F.3d at 210; *Guidry v. American Public Life Insurance Co.*, 512 F.3d 177, 180 (5th Cir. 2007).

The Supreme Court, however, has declared that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S.Ct. at 1949 (internal citation omitted). Moreover, "[f]actual allegations must be enough to raise a right to relief above the speculative level," and "[t]he plaintiff must plead enough facts to state a claim to relief that is plausible on its face." *Guidry*, 512 F.3d at 180 (quotation marks omitted). The United States Supreme Court also has explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it

>asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Iqbal*, 129 S.Ct. at 1949 (citations and quotation marks omitted).

In determining whether a complaint states a claim that is plausible on its face, the court "draw[s] on its judicial experience and common sense." *Iqbal*, 129 S.Ct. at 1950. Thus, to avoid dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570). In order for a claim to be plausible at the pleading stage, the complaint need not strike the reviewing court as probably meritorious, but it must raise "more than a sheer possibility" that the defendant has violated the law as alleged. *See Id*. Furthermore, the factual allegations must be "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

### C. Standard of Review for Frivolousness

Title 28 U.S.C. § 1915A and Title 42 U.S.C. § 1997e(c) require the Court to *sua sponte* dismiss cases filed by prisoners proceeding *in forma pauperis* upon a determination that they are frivolous. The Court has broad discretion in determining the frivolous nature of the complaint. *See Cay v. Estelle,* 789 F.2d 318 (5th Cir. 1986), *modified on other grounds, Booker v. Koonce,* 2 F.3d 114 (5th Cir. 1993). However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

Under this statute, a claim is frivolous only when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams,* 490 U.S. 319 (1989); *Talib v. Gilley,* 138 F.3d 211, 213 (5th Cir. 1998). A claim lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist. *Harper v.*

*Showers,* 174 F.3d 716, 718 (5th Cir. 1999). It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations. *Denton v. Hernandez,* 504 U.S. 25, 32-33 (1992); *Neitzke,* 490 U.S. at 327-28. Therefore, the Court must determine whether the plaintiff's claims are based on an indisputably meritless legal theory or clearly baseless factual allegations. *Reeves v. Collins,* 27 F.3d 174, 176 (5th Cir. 1994); *see Jackson v. Vannoy,* 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus,* 976 F.2d 268, 269 (5th Cir. 1992).

## III. Review for Frivolousness

### A. Use of Inmate Funds to Pay Medical Bills

Under a broad reading, Green complains that excessive funds were debited from his inmate account to pay for medical treatment he received at Lallie Kemp Medical Center. He claims that the amount he was billed exceeded the amount he was to be charged by the jail for the same services according to the jail's medical fee schedule.

For an inmate, "[t]here is ... no general constitutional right to free health care." *Reynolds v. Wagner*, 128 F.3d 166, 174 (3d Cir.1997). Charging inmates for medical care, therefore, is not per se unconstitutional. *Id*. Furthermore, while it is true that prisoners may have a property interest in the funds in their prison accounts, *see Campbell v. Miller*, 787 F.2d 217, 222 (7th Cir. 1986), there is no constitutional protection owed to the inmate without a showing that he was deprived of those funds without due process of law. "In procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, or property' is not itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). In the absence of an allegation that the deductions occurred without due process of law, the plaintiff cannot succeed on a procedural due process claim.

Even assuming that Green alleged that he has been deprived of his property without due process of law, random and unauthorized deprivations of property by state officials, whether negligent or intentional, do not violate the federal constitution if an adequate post-deprivation state remedy exists. *Alexander v. Ieyoub*, 62 F.3d 709, 712 (5th Cir. 1995) (citing *Hudson v. Palmer*, 468 U.S. 517 (1984); *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986)); *accord Wilson v. Holt*, 158 Fed. App'x 546, 546 (5th Cir. 2005). The Fifth Circuit has clearly recognized that Louisiana tort laws under La. Civ. Code art. 2315 *et seq*. provide an adequate remedy for both intentional and negligent deprivations of property. *Hutchinson v. Prudhomme*, 79 Fed. App'x 54, 55 (5th Cir. 2003); *Copsey v. Swearingen*, 36 F.3d 1336, 1342-43 (5th Cir. 1994); *Marshall v. Norwood*, 741 F.2d 761, 764 (5th Cir. 1984).

Green's allegation against the defendants that his inmate funds were improperly deducted to pay his medical bills should be dismissed as frivolous or for failing to state a claim for which relief can be granted under § 1915 and §1915A.

### B.     Claims Against Inmate Christopher Thomas in His Individual Capacity

Green named an inmate, Christopher Thomas, as a defendant, because he was the inmate nurse who was instructed by the guards to wrap Green's hand after the incident. This was the only involvement Thomas had with Green's injury. To the extent Thomas was empowered as a state actor,[4] Green has failed to allege a basis for his liability in this case.

---

[4] Section 1983 imposes liability on any person who violates someone's constitutional rights while acting under color of state law. 42 U.S.C. § 1983; *see Will v. Michigan Department of State Police*, 491 U.S. 58 (1989). Under § 1983, the plaintiff must prove that a constitutional violation occurred, and that the defendant's actions were taken under color of state law. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156 (1978). If there is a sufficient nexus between the private actor's allegedly unconstitutional conduct and state involvement, a private actor may be deemed a state actor for § 1983 purposes. *Albright v. Longview Police Dep't*, 884 F.2d 835, 838 (5th Cir. 1989) (delineating three tests to determine the sufficiency of the nexus: (1) state creates a legal framework that governs the private conduct; (2) state delegates traditional powers to a private party; or (3) state establishes "symbiotic relationship" with private party); *but*

The court recognizes that, at the time of the alleged violations, Green was a pretrial detainee. Pretrial detainees are protected from undue punishment by the Due Process Clause of the Fourteenth Amendment. *Lopez v. LeMaster*, 172 F.3d 756, 759 n.2 (10th Cir.1999) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979)). Although the distinction is primarily one of formality, in order to determine whether a pretrial detainee's rights have been violated under the Fourteenth Amendment, the court applies an analysis identical to that applied in Eighth Amendment cases. *Hare v. City of Corinth*, 74 F.3d 633, 643 (5th Cir. 1996).

The standard of conduct for providing medical care to inmates under the Eighth Amendment was clearly established by the Supreme Court in *Estelle v. Gamble*, 429 U.S. 97 (1976). In *Estelle*, the Court held that deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary wanton infliction of pain," proscribed by the Eighth Amendment. *Id.* at 104. This is true where the indifference is manifested by prison doctors in their response to the prisoner's needs. It is also true where the indifference is manifested by prison officials in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. *Id.* In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment. *Id*.

In the instant case, Green does not allege that Thomas acted with deliberate indifference in wrapping his hand as ordered by the prison guards. He does not challenge the care provided by Thomas as a mere inmate nurse. Without some allegation that Thomas acted with deliberate

---

*see*, *Denson v. Shabazz*, 44 Fed. App'x. 652, 2002 WL 1396955, at *3 (5th Cir. 2002) (inmate assigned as Islamic Coordinator over other inmates was not a state actor where his duties were not discretionary or decision-making authority).

10

indifference, Green has not stated a claim against Thomas under the Eighth or Fourteenth Amendment.

For these reasons, the claims against defendant Christopher Thomas in his individual capacity are frivolous and otherwise fail to state a claim for which relief can be granted pursuant to § 1915, § 1915A and § 1997e.

### C. Claims against Murphy and Pinion in Their Individual Capacities

Green named Administrator Stewart Murphy and Assistant Warden Pinion as defendants because of their administrative roles at the TPJ. He conceded that these persons were not directly involved in the medical care he received at the prison or in the denial of medical care after the incident. Neither his complaint nor his *Spears* Hearing testimony presents an allegation which would entitle him to relief against these defendants.

Green instead indicated that he named Murphy and Pinion as supervisory officials over the jail. However, supervisory officials cannot be held liable pursuant to § 1983 under any theory of *respondeat superior* simply because an employee or subordinate, whether a deputy or health care provider, allegedly violated the plaintiff's constitutional rights. *See Alton v. Texas A&M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999); *see also Baskin v. Parker*, 602 F.2d 1205, 1220 (5th Cir. 1979). A person may be liable under § 1983 only if he "was personally involved in the acts causing the deprivation of his constitutional rights or a causal connection exists between an act of the official and the alleged constitutional violation." *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir. 1981); *see also Watson v. Interstate Fire & Cas. Co.*, 611 F.2d 120 (5th Cir. 1980).

Green has not alleged that Murphy or Pinion were personally involved in his medical care, in addressing his requests or complaints, or in coordinating the medical services provided to him at

the prison. An official is deliberately indifferent to an inmate's medical needs or safety in violation of the Eighth Amendment "only if he knows that the inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). Without a showing of such knowledge, these defendants cannot be held liable under § 1983 in their individual capacities under a theory of *respondeat superior*.

The claims against defendants Murphy and Pinion in their individual capacities are frivolous and otherwise fail to state a claim for which relief can be granted pursuant to § 1915, § 1915A and § 1997e.

## IV. Review of Defendants' Motion Under Fed. R. Civ. P. Rule 12(c)

The defendants, Edwards, Jackson, Murphy, Sweeney, Thomas, and Pinion, filed this motion seeking dismissal of the claims against them in their official capacities and dismissal of Green's medical indifference claims all for failure to state a claim for which relief can be granted. Specifically, the defendants argue that the claims against Edwards in his official capacity should be dismissed for Green's failure to set forth a basis for liability against the Parish of Tangipahoa, the entity Edwards represents. They also seek dismissal of the official capacity claims against defendants Jackson, Murphy, Sweeney, Thomas, and Pinion, for failing to allege them to have final decision-making authority at the jail. The defendants claim that any actions taken by them are taken at the direction of the Sheriff. With regard to the medical indifference claims raised, the defendants argue that Green has not established a practice or policy of not treating hand lacerations at the prison. They further argue that he has not alleged an intent to disregard his medical needs by the defendants.

With reference to dates and matters outside of the pleadings, the defendants argue that Green did not suffer from a serious medical need and altered his story about the cause of the laceration on

his hand. The review by this Court, however, is limited to the pleadings and anything attached thereto. *Great Plains Trust Co.*, 313 F.3d at 313. Defendants' unsupported assertions regarding dates, treatment notes, and other matters outside of the record are not properly before the Court.

### A. Claims Against Sheriff Edwards in His Official Capacity

The defendants move to dismiss the claims urged against Sheriff Edwards in his official capacity. The defendants argue that Green failed to identify an unconstitutional official policy or custom of Sheriff Edwards that caused his injury.

The United States Fifth Circuit Court of Appeals has held that suit against a Sheriff in his official capacity is suit against the Parish. *Jacobs v. W. Feliciana Sheriff's Dep't*, 228 F.3d 388, 392 (5th Cir. 2000) ("suit against Sheriff Daniel in his official capacity is a suit against the Parish"); *accord*, *Victoria W. v. Larpenter*, 369 F.3d 475, 481 (5th Cir. 2004) (where sheriff's office employees sued in official capacity and the Parish were the only remaining defendants, "[t]he Parish is thus the only true defendant remaining in the suit," citing, *inter alia*, *McMillian v. Mich. Dept. of State Police*, 491 U.S. 58, 70-71 (1989)); *see also*, *Corley v. Prator*, 290 Fed. App'x. 749, 752 (5th Cir. 2008) (suit against sheriff in his official capacity "must be treated as suit against the municipality"). The Louisiana Constitution provides that "the sheriff is the chief law enforcement officer of the parish in which he is elected. A sheriff is responsible to the people of the parish, and the functions are typically local. Although the sheriff enforces state laws and performs certain duties for the benefit of the state, these duties are generally performed only within a given parish." *Porche v. St. Tammany Parish Sheriff's Office*, 67 F. Supp.2d 631, 635 (E.D. La. 1999) (referring to La. Const. art. 5, § 27).

To identify officials or governmental bodies which speak with final policymaking authority for a local government, the court focuses on the specific "action alleged to have caused the particular constitutional or statutory violation at issue" and determines whether the party responsible for that action is the final policymaker in that particular area. *McMillian*, 520 U.S. at 785. In keeping with these parameters, the Fifth Circuit has held that the Sheriff in his official capacity is the final policymaker on behalf of the Parish on the matters assigned to him under state and local law. *Porche*, 67 F. Supp.2d at 635. As a parish official, as opposed to a state or city official, it would follow then that he acts on behalf of the Parish when he acts in his official capacity. Thus, suit against the Sheriff in his official capacity is actually suit against the Parish. *See Jacobs*, 228 F.3d at 392.

For purposes of liability under § 1983 against the Parish, or the officer in his official capacity, the plaintiff must show the existence of an officially adopted policy or an established custom of the local governing body that caused injury and show a causal connection between that policy or custom and the deprivation of a constitutional right. *Collins v. Doyle*, 209 F.3d 719, 2000 WL 284021, at *3 (5th Cir. Feb. 9, 2000) (Table, Text in Westlaw) (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978)).

The same is true for the Sheriff as a supervisory official for liability in his individual capacity. Where there is no individual action, a supervisor may still be liable under § 1983 "without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional

violation."[5]  *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987).  An official policy is defined as follows:

1. a policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the [government entity] . . . or by an official to whom the [entity] ha[s] delegated policy-making authority; or

2. A persistent, widespread practice of . . . officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents [the entity's] policy.

*Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir.1992).  A plaintiff may also establish a custom or policy based on an isolated decision made in the context of a particular situation if the decision was made by an authorized policymaker in whom final authority rested regarding the action ordered.  *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124-25 (1988); *Bennett v. Pippin*, 74 F.3d 578, 586 (5th Cir. 1996).

Under a broad reading, considering the complaint and the *Spears* Hearing testimony, Green alleges that the prison had a policy of not providing professional medical care at the facility which contributed to the delay in his care, responsiveness to his requests for care, and ultimately may have contributed to the permanent injury to his hand.  If this is accepted as true, as required under Rule 12, there is a plausible basis for holding Sheriff Edwards liable for the decision not to have qualified and professional medical care at the prison.  Under Louisiana law, it is clear that "the Sheriff in his official capacity is the appropriate governmental entity responsible for any constitutional violations committed by his office."  *Jones v. St. Tammany Parish Jail*, 4 F. Supp.2d 606, 614 (E.D. La. 1998)

---

[5]Not relevant here, a supervising officer not personally involved in the acts that deprived the plaintiff of his constitutional rights also may be liable under § 1983 if: (1) the supervising officer failed to train or supervise the subordinate officers involved; (2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's constitutional rights; and (3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights.  *Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 1991) (citations omitted).  There is no failure to train claim raised in this civil action.

(citations omitted). Based on Green's complaint, combined with his *Spears* Hearing testimony, he has stated a sufficient basis to hold Sheriff Edwards liable in his official capacity as a final policymaker and in his individual capacity as a supervisor with policy-making authority.

### B. Claims Against Jackson, Murphy, Sweeney, Thomas, and Pinion in Their Official Capacities

The defendants move for dismissal of the claims urged against the defendants Jackson, Murphy, Sweeney, Thomas, and Pinion in their official capacities on the basis that they cannot be held liable in an official capacity where they do not have final policy-making authority. As discussed in the foregoing section of this Report, suit against parish employees in their official capacities would be suit against the Parish. *See Jacobs*, 228 F.3d at 392. As noted by the defendants, such official responsibility is premised upon a final policy-making authority, something here left to Sheriff Edwards under whose direction these defendants act. Consequently, there is no basis for seeking relief against these Parish employees in their official capacities, where suit against the proper official, Sheriff Edwards, in his official capacity already lies. *Causey v. Parish of Tangipahoa*, 167 F. Supp.2d 898, 909 (E.D. La. 2001) (citing *Jones*, 4 F. Supp.2d at 614).

For these reasons, the defendants' motion should be granted in part and the claims against defendants Jackson, Murphy, Sweeney, Thomas, and Pinion in their official capacities be dismissed.

### C. Claims of Medical Indifference

Defendants argue that Green has failed to allege that they demonstrated an intentional indifference to a serious medical need to support his claim of medical indifference. Based on the foregoing findings and recommendations, the medical indifference discussion will be addressed as

to the remaining defendants, Jackson and Sweeney in their individual capacities and Sheriff Edwards in his official and individual capacities as final policymaker.

Green alleges that, other than the wrapping of his hand on the day of the incident by the inmate nurse, he waited three or four days to be seen by Deputy Sweeney, at which time he received ibuprofen and was sent to the hospital for x-rays. Thereafter, his requests for medication and additional diagnosis and treatment for the swelling went unanswered, until he was examined in August 2009 by a hand specialist. By that time, he was informed that the healing process had begun and nothing could be done for the loss of use except therapy, which he never received.

As discussed previously, deliberate indifference by prison personnel to a prisoner's medical needs is actionable under § 1983 pursuant to the Eighth Amendment. *Hare*, 74 F.3d at 643; *see Estelle*, 429 U.S. at 104-105. A prison official is deliberately indifferent if he or she has actual knowledge of a substantial risk of harm to an inmate and disregards that substantial risk. *Farmer*, 511 U.S. at 847.

Mere disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs. *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997). Therefore, inadequate medical treatment of inmates may, at a certain point, rise to the level of a constitutional violation, while malpractice or negligent care does not. *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993) ("It is clear that negligent medical treatment is not a cognizable basis upon which to predicate a section 1983 action."); *Williams v. Treed*, 671 F.2d 892, 901 (5th Cir. 1982) ("mere negligence in giving or *failing to supply* medical treatment would not support an action under Section 1983." (emphasis added)); *see also Jackson v. Cain*, 864 F.2d 1235, 1246 (5th Cir. 1989).

In the instant case, Green alleges that both Warden Jackson and Deputy Sweeney ignored his complaints and requests for medical attention over the course of almost eight months between his last examination at Lallie Kemp and the visit with the hand specialist. Green concedes that he was told by Sweeney that he had an appointment scheduled, but during the course of that time, he was not seen by anyone for the swelling or provided with medication for the pain and swelling. He further attested that Warden Jackson failed to respond to any of the complaints sent to her or to the prior warden, Warden Wheat, who stepped down in January of 2010.

The Court notes that there is no constitutional issue with the mere fact that Green did not receive responses or favorable responses to his grievances and complaints. *See Wilcox v. Johnson*, 85 F.3d 630, 1996 WL 253868 at *1 (6th Cir. May 13, 1996) (Table, Text in Westlaw); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994); *Buckley v. Barrow*, 997 F.2d 494, 495 (8th Cir. 1993); *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991); *Flowers v. Tate*, 925 F.2d 1463, 1991 WL 22009 at *1 (6th Cir. Feb. 22, 1991) (Table, Text in Westlaw).[6] There is no constitutional guarantee that the inmate will be satisfied with the responses given to his grievance complaints by the prison officials. *Id.* However, what Green has presented through his allegations here is that Warden Jackson and Deputy Sweeney were placed on notice of his continuing injury and pain, and those requests for medical attention were deferred for up to eight months and/or went unanswered. This is enough to at least state a <u>plausible</u> basis for intentional indifference to his medical needs.

The Court is aware that the defendants' motion takes issue with the severity of Green's injury, referring to it as a mere cut on his hand. Green's allegations and testimony set forth

---

[6]*See Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995) (right to access to courts may extend to ARP when prisoner is required to exhaust ARP before seeking relief in federal court); *Hancock v. Thalacker*, 933 F. Supp. 1449, 1488-89 (N.D. Iowa 1996). Denial of access to this Court is not an issue in this case.

something much more severe. He alleges that he has suffered a permanent loss of use of the middle finger on his right hand due to a severed tendon that went unattended. The Court cannot consider under Rule 12 the unsupported assertions in a memorandum to refute the allegations urged by the plaintiff under oath. The defendants will have an opportunity to present any such evidence to demonstrate that plaintiff had no real injury or that the injury did not occur as alleged.

For now, the allegations before the Court are sufficient to state a plausible claim that he was denied adequate medical care by the prison officials at a prison which fails to provide on-site professional medical care and instead relied upon a deputy and an inmate to assess the medical needs of the plaintiff and which lack of care led to a permanent loss of use of the middle finger on his right hand. For these reasons, the motion should be denied on this issue.

## V.    Recommendation

It is therefore **RECOMMENDED** that Green's 42 U.S.C. § 1983 claims against the defendants challenging the taking of funds from his account to pay medical bills be **DISMISSED WITH PREJUDICE** as frivolous or for failure to state a claim pursuant to 28 U.S.C. § 1915 and § 1915A and 42 U.S.C. § 1997e.

It is further **RECOMMENDED** that Green's § 1983 claims against inmate Christopher Thomas, Stewart Murphy, and Brandon Pinion, each in their individual capacities, be **DISMISSED WITH PREJUDICE** as frivolous or for failure to state a claim pursuant to 28 U.S.C. § 1915 and § 1915A and 42 U.S.C. § 1997e.

It is further **RECOMMENDED** that the defendants' **Motion to Dismiss (Rec. Doc. No. 18)**, as considered here under Fed. R. Civ. P. 12(c), be **GRANTED in part** to **DISMISS WITH**

**PREJUDICE** Green's § 1983 claims against defendants Warden Joyce Jackson, Stewart Murphy, Sean Sweeney, Christopher Thomas, and Brandon Pinion, each in their official capacities.

It is further **RECOMMENDED** that the defendants' **Motion to Dismiss (Rec. Doc. No. 18)**, as considered here under Fed. R. Civ. P. 12(c), be **DENIED in part** as to the plaintiff's § 1983 claims against the defendant Sheriff Daniel Edwards in his individual and official capacity and Green's § 1983 medical indifference claims against defendants Warden Joyce Jackson and Sean Sweeney each in their individual capacities.

Green's claims of intentional indifference to his medical care against Warden Jackson and Deputy Sweeney each in their individual capacity only, and the related policy claims against Sheriff Daniel Edwards in his individual and official capacities will remain automatically referred to the undersigned Magistrate Judge for further proceedings.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within **fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. U.S.A.A.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[7]

New Orleans, Louisiana, this 17th day of October, 2011.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[7]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.